FILED
10/6/23 2:41 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: : | Case No. 22-10043-GLT |
| **RANDALL K. BUSH** and : | Chapter 13 |
| **GINA R. BUSH**, : | |
| *Debtors*. : | Related to Dkt. Nos. 78, 81, 83 |

Rodney D. Shepherd, Esq.
Law Offices of Rodney Shepherd
Pittsburgh, PA 15203
*Attorney for the Debtor*

# MEMORANDUM OPINION

"The cover-up, more than the initial wrongdoing, is what is most likely to bring you down."[1] After essentially ignoring Gina and Randall Bush's (the "Debtors") personal injury claim, Attorney Rodney D. Shepherd later discovered that they settled it and squandered the non-exempt proceeds. Rather than coming clean immediately, Attorney Shepherd suppressed the Debtors' indiscretions, failing to inform the Court for six months. Although he is not responsible for their dissipation of estate assets, his concealment of it violated his duties under the Bankruptcy Code and Rules,[2] as well as the Rules of Professional Conduct.[3] For the reasons detailed below, the Court finds that Attorney Shepherd's conduct warrants sanctions.

---

[1] Madeleine Albright, Madam Secretary: A Memoir, Chapter 18 (2003).

[2] Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific sections shall be to the Bankruptcy Reform Act of 1978, as thereafter amended, 11 U.S.C. § 101, *et seq.* All references to "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure.

[3] Nothing in this *Memorandum Opinion* should be read to absolve the Debtors of their primary responsibility for the mess they created.

I.   **BACKGROUND**

In October 2018, Gina Bush sustained a personal injury which gave rise to a claim on behalf of herself and her husband, Randall.[4] The Debtors retained Russell J. Bopp and the law firm of Marcus & Mack, P.C. ("Special Counsel") to pursue the claim.[5] The claim eventually yielded multiple settlements, the first of which occurred in December 2021 and totaled $25,000.[6]

Around this same time, the Debtors met with Attorney Shepherd to discuss their need for bankruptcy relief.[7] They disclosed the existence of the claim, informing Attorney Shepherd that they retained Special Counsel, received a partial settlement of about $2,000,[8] and that other settlement discussions were ongoing.[9] Following their meeting, Attorney Shepherd prepared the Debtors' petition, but he did not reach out to Special Counsel to discuss the claim and its potential impact on their bankruptcy case. He accepted $600 prepetition for his legal services with a balance of $4,400 to be paid through the plan.[10]

Attorney Shepherd filed this case in late January 2022.[11] Although the schedules disclosed the *existence* of the personal injury claim, the details of the disclosure are woefully

---

[4]   *Schedule A/B: Property,* Dkt. No. 13 at 7.

[5]   Id.

[6]   *Application for Employment of a Professional Nunc Pro Tunc*, Dkt. No. 66 at ¶ 7.

[7]   *Debtors' Response to Order to Show Cause*, Dkt. No. 125 at ¶ 1; *Declaration,* Dkt. No. 125-1 at ¶ 1.

[8]   Although there is conflicting information about the exact amount of net proceeds distributed to the Debtors from the first settlement, the pleadings suggest they received between $2,000-$2,250. Earlier documents state the Debtors received net proceeds of $2,000, but later-filed documents indicate the amount was $2,250. Compare *Motion for Approval of Settlement and Final Distribution Nunc Pro Tunc*, Dkt. No. 64 at ¶ 4, with *Debtors' Response to Order to Show Cause,* Dkt. No. 125 at ¶ 5 and *Declaration,* Dkt. No. 125-1 at ¶ 1.

[9]   *Declaration,* Dkt. No. 125-1 at ¶¶ 1-2; *Motion for Approval of Settlement and Final Distribution Nunc Pro Tunc*, Dkt. No. 64 at ¶¶ 3-4.

[10]  *Disclosure of Compensation of Attorney for Debtor(s)*, Dkt. No. 13 at 38.

[11]  *Chapter 13 Petition,* Dkt. No. 1. This was their second case in a month. The first case was filed to stop the impending repossession of their 2016 Dodge Charger, but was dismissed soon after because the Debtors failed to produce credit counseling certificates. See Case No. 22-10017-TPA; *Debtors' Response to Order to Show Cause*, Dkt. No. 125 at ¶¶ 3, 6. Apparently, the Debtors falsely stated that they had completed credit

2

inaccurate. *Schedule A/B* listed the personal injury claim with a value of $2,000, which is equal to the amount of net proceeds the Debtors received from the first settlement.[12] In other words, Attorney Shepherd conflated the net proceeds from the partial settlement with the value of the unsettled portion of the claim. The Debtors used the reduced valuation to assert that the claim and any related proceeds were fully exempt.[13] The partial settlement was also omitted from their *Statement of Financial Affairs*.[14]

Following confirmation of the Debtors' chapter 13 plan in May 2022,[15] things began to unravel. When Attorney Shepherd contacted the Debtors to notify them of confirmation, they revealed that they had entered into additional settlement agreements a few weeks earlier.[16] The value of the new settlements totaled $82,500 and yielded net proceeds of $55,000 to the Debtors.[17] By that point, the Debtors had spent most of the settlement proceeds to renovate their home and purchase a 2018 Dodge Ram.[18] Because Attorney Shepherd cannot establish when this call occurred, it is possible that $11,000 from the settlement proceeds remained when he spoke to

---

counseling which Attorney Shepherd did not confirm before filing the petition. *Declaration*, Dkt. No. 125-1 at ¶¶ 3-5. Worse still, the filing fee for the initial chapter 13 case was never paid.

[12] The Debtors' *Motion for Approval of Settlement and Final Distribution Nunc Pro Tunc,* states that the schedules listed the partial settlement "along with the potential claim that might result in additional settlements." This is plainly untrue, as nothing in *Schedule A/B* indicates that more settlements might occur. Compare *Schedule A/B: Property,* Dkt. No. 13 at 7 with *Motion for Approval of Settlement and Final Distribution Nunc Pro Tunc,* Dkt. No. 64 at ¶ 4.

[13] *Schedule C: The Property You Claim as Exempt*, Dkt. No. 13 at 9-10.

[14] See *Statement of Financial Affairs for Individuals Filing for Bankruptcy*, Dkt. No. 13 at 24.

[15] See *Plan Confirmation Order*, Dkt. No. 53.

[16] *Motion for Approval of Settlement and Final Distribution Nunc Pro Tunc, Dkt*. No. 64 ¶¶ 6-8; *Verified Response of Attorney Rodney Shepherd to Rule to Show Cause Order*, Dkt. No. 81 at ¶¶ 22-23; *Debtors' Response to Order to Show Cause*, Dkt. No. 125 at ¶ 10.

[17] *Motion for Approval of Settlement and Final Distribution Nunc Pro Tunc, Dkt*. No. 64 ¶¶ 7-8.

[18] *Verified Response of Attorney Rodney Shepherd to Rule to Show Cause Order*, Dkt. No. 81 at ¶ 23.

them.[19] Even so, none of the proceeds were applied against the Debtors' plan obligations, though they were making incomplete plan payments at the time.[20] And, because they purchased the 2018 Dodge Ram, the Debtors unilaterally ceased payments to Credit Acceptance, the creditor holding a lien on their 2016 Dodge Charger.[21]

Though allegedly shocked and upset by the Debtors' actions, Attorney Shepherd took no corrective action. He did not amend the Debtors' schedules or plan, and made no attempt to effectuate a surrender of the 2016 Dodge Charger. Nor did Attorney Shepherd seek approval of the settlements or the Debtors' retention of non-exempt proceeds. Worse still, even though he finally contacted Special Counsel and received its executed verification statement in June 2022,[22] Attorney Shepherd delayed filing an employment application for nearly seven months. It was not until December 2022 that he finally filed motions requesting retroactive approval of the settlement, its distribution, and the employment of Special Counsel.[23] The chapter 13 trustee opposed both motions.[24]

At the hearing, Attorney Shepherd admitted that he intentionally withheld the status of the settlements to avoid adversely affecting the Debtors' ability to obtain a modification of their

---

[19] See *Verified Response of Attorney Rodney Shepherd to Rule to Show Cause Order*, Dkt. No. 81 at ¶ 24; see also *Status Report/Accounting*, Dkt. No. 79 at ¶ 8.

[20] See *Audio Recording of February 8, 2023 Hearing* at 2:02:30–2:03:52 p.m.

[21] Id. at 2:06:20–2:06:40 p.m. (The Court: "You were affirmatively told by the Debtors that you don't need to include the Dodge Charger in the plan anymore, is that correct? Or [the Debtors] don't need to make payments on it anymore because [they've] got another vehicle." – Atty. Shepherd: "Yes.").

[22] See *Verification of Attorney*, Dkt. No. 66-2 (executed June 20, 2022).

[23] *Motion to Approve Settlement and Final Distribution Nunc Pro Tunc*, Dkt. No. 64; *Application for Employment of a Professional Nunc Pro Tunc*, Dkt. No. 66.

[24] *Chapter 13 Trustee's Response to Motion for Approval of Settlement and Final Distribution Nunc Pro Tunc*, Dkt. No. 69; *Chapter 13 Trustee's Response to Application for Employment of a Professional Nunc Pro Tunc*, Dkt. No. 70.

residential mortgage loan.[25] He reasoned that "if [the settlement] was disclosed right away, it would hurt [the Debtors] and they possibly would not be able to get the loan modification."[26] Attorney Shepherd also explained that he delayed Special Counsel's retention application because he "always" waits until a plan is confirmed before beginning such work since "a lot of cases end up getting dismissed."[27] When confronted with the fact that his actions contradict bankruptcy rules and precedent, Attorney Shepherd merely stated "I'm just telling you how I generally do it."[28]

        Unlike Attorney Shepherd's dithering, Special Counsel appeared and proactively offered to disgorge $7,000 of its fees to provide the unsecured creditors a recovery of over 25%.[29] Special Counsel was apparently unaware of the bankruptcy until late May 2022,[30] and then promptly contacted the trustee when it discovered that Attorney Shepherd sat on its application for months.[31] Special Counsel acknowledged that both motions should have been filed months earlier, but argued that in light of its proposal, retroactive approval would create a better outcome for unsecured creditors.[32] Finding this resolution reasonable under the circumstances, the Court approved the settlement and Special Counsel's employment under modified terms.[33]

---

[25] *Audio Recording of January 11, 2023 Hearing* at 9:28:00– 9:29:15 a.m.; see also *Verified Response of Attorney Rodney Shepherd to Rule to Show Cause Order*, Dkt. No. 81 at ¶ 26.

[26] *Audio Recording of January 11, 2023 Hearing* at 9:29:15– 9:29:31 a.m.

[27] Id. at 9:21:35– 9:21:43 a.m.; see also *Verified Response of Attorney Rodney Shepherd to Rule to Show Cause Order,* Dkt. No. 81 at ¶ 21 (Attorney Shepherd believes operating in this way "conserves resources.")

[28] *Audio Recording of January 11, 2023 Hearing* at 9:25:26– 9:26:17 a.m. (The Court: "There's nothing in the code that says you don't do this until the plan gets confirmed. There's no escape hatch for that." – Atty. Shepherd: "Well I know there's nothing in there… I'm just… okay, I'm just telling you how I generally do it." – the Court: "Well that doesn't mean it's the right way to do it.").

[29] Id. at 9:33:15– 9:33:47 a.m.

[30] Id. at 9:32:01– 9:32:25 a.m.

[31] Id. at 9:32:55– 9:33:15 a.m.

[32] Id. at 9:33:50– 9:35:33 a.m.

[33] The motions were approved subject to some modifications not relevant here. See *Order of Court,* Dkt. No. 74 (directed all remaining settlement proceeds to be paid over to the chapter 13 trustee and submission of a

Following the hearing, the Court ordered Attorney Shepherd to show cause why he should not be sanctioned for his knowing concealment of estate assets.[34] In response, he purportedly recognized his "lapse in judgment"[35] yet repeatedly defended his actions and conceded to no ethical improprieties. Indeed, Attorney Shepherd asserted that he "felt obligated" to conceal what the Debtors had done because "attorneys must mitigate the impact of their clients' actions."[36] In sum, the response suggested that he failed to fully grasp the gravity of his missteps and the importance of adhering to proper procedures. And shockingly, in a footnote, Attorney Shepherd revealed that sometime in the weeks before, the Debtor's minor son wrecked the 2016 Dodge Charger (which should have been surrendered), rendering it a total loss.[37]

Ultimately, the show cause hearing yielded more questions than answers, requiring deeper probes into the concealment and wasting of assets, including the destruction of the 2016 Dodge Charger.[38] Hearings were held and documents were submitted, yet little was uncovered other than the 2016 Dodge Charger was uninsured at the time of the accident.[39] Attorney Shepherd filed amended schedules and an amended plan that will pay general unsecured creditors in full,[40] necessitated by the Debtors' inability to exempt all the settlement proceeds.[41] With as much

---

detailed accounting of how the proceeds were spent); see also *Order of Court*, Dkt. No. 75 (approved employment of Special Counsel as of June 20, 2022, and added provision for disgorgement of $7,000).

[34] *Order to Show Cause*, Dkt. No. 78.

[35] *Verified Response of Attorney Rodney Shepherd to Rule to Show Cause Order*, Dkt. No. 81 at ¶ 36.

[36] Id. at ¶ 33(f).

[37] Id. at n.2.

[38] *Order to Show Cause*, Dkt. No. 100; *Order to Show Cause*, Dkt. No. 137.

[39] See *Amended Status Report*, Dkt. No. 140 at ¶ 10.

[40] See *Amended Schedule A/B: Property*, Dkt. No. 90-1 at 2; *Amended Schedule A/B: Property*, Dkt. No. 103-1 at 2; *Amended Schedule C: Property You Claim as Exempt*, Dkt. No. 90-1 at 8-10; *Amended Schedule C: Property You Claim as Exempt*, Dkt. No. 103-1 at 8-10; *Amended Chapter 13 Plan Dated February 27, 2023*, Dkt. No. 110 at 9.

[41] See *Order of Court*, Dkt. No. 134.

6

information as the Court has been able to pry from Attorney Shepherd and the Debtors, the *Order to Show Cause* is now ripe for determination.

## II.   JURISDICTION

This Court has authority to exercise jurisdiction over the subject matter and the parties under 28 U.S.C. §§ 157(a), 1334, and the Order of Reference entered by the United States District Court for the Western District of Pennsylvania on October 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## III.   DISCUSSION

Bankruptcy attorneys are not guarantors of their clients' good behavior. While they must carefully instruct debtors regarding their legal obligations and provide counsel as circumstances arise, they cannot be held responsible when clients inexplicably go rogue. Yet as an officer of the court, an attorney is duty-bound to timely report a debtor's unauthorized activities or the discovery of material undisclosed assets. And under no circumstances should an attorney enable the client's wrongful behavior or further the concealment.

In hindsight, Attorney Shepherd's "lapse in judgment" is only the most prominent of a series of transgressions. His response reveals a system of faulty practices that play fast and loose with his obligations as debtors' counsel. Attorney Shepherd seemingly vacillates between laissez-faire inattention and playing catch-up, cultivating an environment where one mistake easily led to another while trying to regain control of the situation. Even if Attorney Shepherd possessed no ill intent (as he maintains), his choices were deliberate and he fails to appreciate their implications. Given his apparent confusion over the unacceptability of his behavior, the Court will spell it out.

First, the Debtors' schedules were problematic from the get-go. *Schedule A/B* assigned a value of only $2,000 to the outstanding personal injury claim, and it appears fully

7

exempt *Schedule C*.[42] Of course, nothing about that was correct—the $2,000 represented only the net-proceeds of a prior partial settlement.

Under Bankruptcy Rule 9011, an attorney certifies that they have performed a reasonable inquiry into the veracity of the information contained within any filing by presenting it to the court.[43] The "concern" under this rule is "not the truth or falsity of the representation," but whether the attorney "reasonably believed it at the time to have evidentiary support."[44] Potential violations are evaluated by what was reasonable under the circumstances.[45] "[R]easonableness," in turn, is "an objective knowledge or belief at the time of the filing of a challenged paper that the claim was well-grounded in law and fact."[46] Thus, violations "might be caused by inexperience, incompetence, willfulness, or deliberate choice."[47]

Attorney Shepherd's preparation of the Debtors' schedules was not reasonable under the circumstances. He *knew* the Debtors engaged Special Counsel, received a partial settlement, and that further settlement negotiations were ongoing.[48] As Attorney Shepherd is an experienced attorney, the Court will assume that he understands that a partial settlement is not equivalent to the full value of a claim. Therefore, Attorney Shepherd either knew, or should have known, that he was misrepresenting the value of the outstanding personal injury claim. The $2,000

---

[42] See *Schedule A/B: Property,* Dkt. No. 13 at 7; *Schedule C: The Property You Claim as Exempt*, Dkt. No. 13 at 9-10.

[43] Fed. R. Bankr. P. 9011(b).

[44] In re Taylor, 655 F.3d 274, 282 (3d Cir. 2011).

[45] Bus. Guides, Inc. v. Chromatic Commc'ns Enterprises, Inc., 498 U.S. 533, 551, 111 S. Ct. 922, 933, 112 L. Ed. 2d 1140 (1991); In re Taylor, 655 F.3d 282; In re Kelly, 649 B.R. 448, 470-1 (Bankr. W.D. Pa. 2023).

[46] Ford Motor Co. v. Summit Motor Prods., Inc., 930 F.2d 277, 289 (3d Cir.1991) (quoting Jones v. Pittsburgh Nat. Corp., 899 F.2d 1350, 1359 (3d Cir. 1990)) (internal quotations omitted).

[47] Cruz v. Savage, 896 F.2d 626, 631 (1st Cir. 1990).

[48] See *Debtors' Response to Order to Show Cause*, Dkt. No. 125 at ¶¶ 1-2; *Declaration,* Dkt. No. 125-1 at ¶¶ 1-2.

partial settlement the Debtors already received should have appeared separately on the *Statement of Financial Affairs*. And carrying these errors into *Schedule C*, Attorney Shepherd created the false impression that the personal injury claim was of no value to the estate. Accordingly, because the Debtors' schedules inexplicably do not reflect Attorney Shepherd's admitted knowledge at the time, he violated Bankruptcy Rule 9011(b)(3).

Attorney Shepherd's next fateful decision was to delay contact with Special Counsel. As an experienced bankruptcy practitioner, he knew that Special Counsel's employment and any settlements required Court approval.[49] Still, his standard practice was to wait until after plan confirmation to formally retain estate professionals.[50] Attorney Shepherd justifies his inaction as "conserve[ing] resources" if a plan cannot be confirmed,[51] but he really means limiting his personal risk of nonpayment until plan distributions begin. This too is concerning because counsel cannot ethically slow-walk a chapter 13 case based on the size of a prepetition retainer. It should go without saying that Attorney Shepherd set the terms of his own engagement, so any discomfort arising from floating the bulk of his fees falls squarely on him.

Regardless, this wait-and-see approach disregards the Court's standard *Chapter 13 Initial Case Management Order*.[52] It expressly requires debtors to "obtain *immediate* Bankruptcy Court approval of any professionals employed prepetition and who continue to be employed."[53] As a regular practitioner before this Court and a recipient of electronic filing notifications,

---

[49] See *Verified Response of Attorney Rodney Shepherd to Rule to Show Cause Order*, Dkt. No. 81 at ¶ 20.

[50] Id. at ¶ 21.

[51] Id.

[52] See http://www.pawb.uscourts.gov/sites/default/files/forms/glt-form-ch13-6.pdf; see also Dkt. No. 58 (docket notification that Judge Taddonio's *Chapter 13 Initial Case Management Order* now applies in this case).

[53] Id. at ¶ 3 (emphasis added).

9

Attorney Shepherd was on notice of the case management order's contents. Admittedly, the case management order did enter until October 1, 2022.[54] Still, he did not comply until mid-December 2022 despite Special Counsel having returned the documents necessary for retention in June. As such, it appears that (unbeknownst to the Court) Attorney Shepherd was in contempt of the case management order for over two months.[55]

Perhaps it is trite to point out that procrastination was a particularly self-defeating practice. Consider the difference in case trajectory had Attorney Shepherd contacted Special Counsel earlier. For example, he might have better understood the potential value of the personal injury claim, which would have allowed greater accuracy preparing the schedules. That said, the Court concedes Attorney Shepherd did not do very well with the information he already had. And a prompt motion to employ would have saved Special Counsel from having to disgorge fees and kept Attorney Shepherd from contempt. But even if Attorney Shepherd did nothing more than speak to Special Counsel, an open line of communication might have prevented the Debtors' dissipation of the settlement proceeds. After all, a warning to Special Counsel not to release non-exempt proceeds would have served everyone's best interest. This sequence of events might have even averted the loss of the 2016 Dodge Charger.

None of this is to say that the Court blames Attorney Shepherd for Debtors' wrongdoing, though the correlation between his choices and these outcomes is undeniable. Essentially, Attorney Shepherd left the bat and ball on the coffee table; and the Debtors chose to

---

[54] The entry of the case management order did not occur until this case was transferred to the undersigned upon the retirement of the Hon. Thomas P. Agresti. See Dkt. No. 57 (case transfer pursuant to *Standing Order 22-228*).

[55] A party is in civil contempt where clear and convincing evidence establishes that: "(1) that a valid court order existed; (2) that the alleged contemnor knew of the order; and (3) that the contemnor disobeyed the order." Minech v. Clearview Fed. Cred. Union (In re Minech), 632 B.R. 274, 280 (Bankr. W.D. Pa. 2021) (quoting Englert v. Ocwen Loan Serv., LLC (In re Englert), 495 B.R. 266, 272 (Bankr. W.D. Pa. 2013)) (internal quotation marks omitted).

play indoors. But once he learned of the damage they caused, Attorney Shepherd had a duty not to hide the broken lamp.

Under Pennsylvania Rule of Professional Conduct 3.3, attorneys owe a duty of candor to the Court.[56] The duty of candor encompasses both initial and continued disclosures to the Court, and requires an attorney to seasonably correct known defects in previously-filed documents upon discovery.[57] And when an attorney learns that a client has engaged in fraudulent or unauthorized conduct, they must take reasonable remedial measures, including, if necessary, disclosure to the tribunal.[58]

Uncomfortable as it may be, disclosure was the only appropriate remedial measure once Attorney Shepherd learned that the Debtors spent the settlement proceeds without Court approval. Concealing the loss of a material asset, even if its economic impact can be blunted, flouts the duty of candor. While Attorney Shepherd understandably desired to avoid an unfavorable outcome or a fight with his own clients, "zealous representation of [a] client does not obviate an attorney's obligation to ensure his client's compliance with applicable law."[59] Additionally, "a lawyer's duty of candor to the court *must always prevail* in any conflict with the duty of zealous advocacy."[60]

To remove any doubt, Attorney Shepherd's eventual disclosure six months after the fact was insufficient. "Even the slightest accommodation of deceit or a lack of candor in any

---

[56] Pa. Rules of Prof'l Conduct 3.3(a).

[57] See U.S. Tr. v. Bresset (In re Engel), 246 B.R. 784, 794 (Bankr. M.D. Pa. 2000); In re Gulczynski, No. 05–21435–RAG, 2008 WL 906816, at *5 (Bankr. D. Md. Apr. 3, 2008).

[58] Pa. Rules of Prof'l Conduct 3.3(b)-(c).

[59] See In re Grasso, 586 B.R. 110, 152 (Bankr. E.D. Pa. 2018).

[60] U.S. Dep't of Hous. & Urb. Dev. v. Cost Control Mktg. & Sales Mgmt. of Virginia, Inc., 64 F.3d 920, 925 (4th Cir. 1995) (emphasis added).

11

material respect quickly erodes the validity of the [judicial] process."[61] His timing is also transparent—had the attempted loan modification succeeded, the Court questions when, if ever, Attorney Shepherd would have disclosed the Debtors' use of the settlement proceeds. A disclosure of material facts only after their concealment is either no longer beneficial or cannot be maintained is the antithesis of candor.[62]

In sum, Attorney Shepherd's conduct fell far short of his obligations. Given the severity of his conduct, the Court must intervene.

Section 105(a) of the Bankruptcy Code vests the Court with authority to issue any order necessary to enforce the requirements of the Bankruptcy Code or to avoid an abuse of process.[63] This includes the authority to enforce the applicable Rules of Professional Conduct.[64] Failure to comply with the rules can be the basis for invoking the disciplinary process and, in some cases, can justify the issuance of appropriate sanctions.[65] The imposition and severity of a sanction depends on the circumstances. A court must consider the willfulness and seriousness of the violation, any extenuating factors, and whether there have been previous violations.[66] Similarly, for violations of Bankruptcy Rule 9011, the court may impose an appropriate sanction limited to

---

[61] In re Grasso, 586 B.R. at 162 (quoting U.S. v. Shaffer Equipment, 11 F.3d. 450, 457-58 (4th Cir. 1993)).

[62] See In re Gulczynski, 2008 WL 906816, at *5 (Counsel's neglect to reveal the dissipation of sale proceeds to the court, despite several opportunities to do so, violated the duty of candor).

[63] 11 U.S.C. § 105(a).

[64] See e.g. In re Willis, 604 B.R. 206, 216 (Bankr. W.D. Pa. 2019) (disgorgement of fees warranted as a sanction for attorney's violations of the Bankruptcy Rules and Rules of Professional Conduct); see also In re Moore, 532 B.R. 614, 629 (Bankr. W.D. Pa. 2015) ("The Court's authority to enforce professional conduct is commensurate with its supervisory responsibilities.").

[65] Pa. Rules of Prof'l Conduct, Preamble at § 18; see e.g. Cleveland Hair Clinic, Inc. v. Puig, 200 F.3d 1063, 1067 (7th Cir. 2000), decision supplemented (Feb. 4, 2000) (The Seventh Circuit noted that violations of the duty of candor "can lead to sanctions even more severe than payment of an opponent's fees and costs.").

[66] Pa. Rules of Prof'l Conduct, Preamble at § 18.

the minimum that will serve to adequately deter the undesirable behavior.[67] Sanctions may consist of directives nonmonetary in nature, or monetary penalties payable to the court.[68]

In determining the appropriate sanction, two factors work in Attorney Shepherd's favor. First, damage to the estate and prejudice to creditors was already inflicted by the Debtors' unauthorized use of the settlement proceeds. Appropriate practices might have prevented any harm from occurring or salvaged some value, but Attorney Shepherd is not responsible. Second, there will be no prejudice if the Debtors complete their confirmed plan paying all creditors in full. There is, however, one exception: Special Counsel's fee.

Frankly, the failure to promptly retain Special Counsel falls largely on Attorney Shepherd. As this Court explained in *In re Young*, Special Counsel had an independent duty to determine whether its client was a debtor and to act accordingly.[69] The Court presumes that Special Counsel's proactive, voluntary disgorgement stemmed from an understanding of that duty. In contrast, Attorney Shepherd's inaction was far more culpable. Even before the concealment (or contempt), he was hired to guide the Debtors through chapter 13, knew about Special Counsel and the personal injury claim, *and still did nothing*. When Attorney Shepherd finally obtained the necessary information for Special Counsel's application, he held it for six months. The lesson here for Special Counsel is to heed the words of President Ronald Reagan: "trust, but verify." Confirm that an employment application is actually filed, else compensation will be at risk.

---

[67] Fed. R. Bankr. P. 9011(c)(2); Doering v. Union Cnty. Bd. of Chosen Freeholders, 857 F.2d 191, 194 (3d Cir. 1988) (quoting Eastway Const. Corp. v. City of New York, 637 F. Supp. 558, 565 (E.D.N.Y. 1986), order modified and remanded, 821 F.2d 121 (2d Cir. 1987)); In re Kelly, 649 B.R. 448, 485 (Bankr. W.D. Pa. 2023).

[68] Fed. R. Bankr. P. 9011(c)(2).

[69] In re Young, 646 B.R. 779, 785-86 (Bankr. W.D. Pa. 2022).

Under the circumstances, the Court concludes that since Attorney Shepherd shares responsibility for omissions that gave rise to Special Counsel's disgorgement, he should share in the consequence as well. Accordingly, the Court will impose a monetary sanction against Attorney Shepherd in the amount of $5,250 payable to Special Counsel, representing 75% of the $7,000 fee voluntarily disgorged. Beyond that, the Court finds that his many failings warrant an additional a monetary fine of $350 payable to the Clerk of Court. Finally, this *Memorandum Opinion* will serve as a public admonishment to ensure the proper lessons are learned.

**IV.    CONCLUSION**

In consideration of the foregoing, the Court will enter an order imposing sanctions against Attorney Shepherd as outlined above. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052. The Court will issue a separate order consistent with this opinion.

ENTERED at Pittsburgh, Pennsylvania.

Dated: October 6, 2023

_____ cgr
GREGORY L. TADDONIO
CHIEF UNITED STATES BANKRUPTCY JUDGE